OPINION OF THE COURT
Sam Eisenberg, J.
The petitioner Mount Vernon Housing Authority is the owner and operator of a multiple dwelling which provides public housing. As such, it is governed by the Public Housing Law of the State of New York and the applicable codes, rules and regulations of the State of New York. The tenant is a young man, 28 years of age, who is the sole survivor of a family which had occupied a 41/2-room apartment within the housing project. This proceeding has been brought for the removal of the young man as a residual single-person occupant under the authority of 9 NYCRR 1627-6.3, entitled “Termination by authority”, which states as follows:
*671 “(a) Grounds for instituting summary proceedings. Following are grounds upon which summary proceedings should be instituted by the authority to recover possession % % 5j<
“(8) Residual single person occupant contrary to authority’s policy on single person occupancy.”
The Mount Vernon Housing Authority has asserted that it has been its policy for over 10 years to bar single-person occupancy of a two-bedroom unit unless the occupant is 50 years of age or older. A person in the 50’s under that policy has been termed a “near senior” and those in the 60’s or older have been termed “senior citizens”. The testimony has established that there was, in fact, such a policy and that it was consistently enforced. However, the policy does not appear to have been reduced to writing. There was no evidence that a statement of this policy was ever transmitted in writing to the Commissioner of Housing and Community Renewal, nor that it was ever approved by that division, nor that it was filed in the office of the Department of State.
It is the position of the tenant that even if such policy existed, it was not properly enacted; did not receive requisite approval and is therefore unenforceable. In support of that position, he notes the provisions of section 54 of the Public Housing Law, which state:
“§ 54 — Filing by authority of by-laws, rules and regulations
“1. An authority shall file with the commissioner a copy of any by-laws, rules and regulations and amendments thereto adopted by it from time to time, which shall become effective upon approval by the commissioner * * *
“2. All rules and regulations, and amendments thereto, adopted by an authority from time to time, except such as relate to its organization or internal management, shall be filed in the office of the department of state.”
Similar requirements with respect to the filing by an authority of its “by-laws, rules and regulations” are to be found in the codes, rules and regulations of New York State. 9 NYCRR 1625-1.2 provides as follows: “The bylaws, rules and regulations and amendments thereto including *672 the rules and regulations and amendments relating to the authority’s organization or internal management * * * shall be filed with the commissioner and shall become effective upon the commissioner’s approval”.
The dispute between the' parties revolves, therefore, about the distinction, if any, between a “policy” as opposed to “by-laws, rules and regulations”. Research has revealed no cases within this State defining and distinguishing these words. Reference is made to Black’s Law Dictionary to assist in the definition of these terms. That classic work defines a rule as “[a]n established standard, guide or regulation. A principle or regulation set up by authority, prescribing or directing action or forbearance; as, the rules of a legislative body, of a company, court, public office”. (Black’s Law Dictionary [5th ed], p 1195.) A regulation is defined as, “a rule or order prescribed for management or government”. {Id., p 1156.) By-laws are defined by Black’s Law Dictionary (5th ed, p 182) as “[regulations, ordinances, rules or laws adopted by an association or corporation or the like for its government.”
A policy, on the other hand, is defined by Black’s Law Dictionary as follows (5th ed, p 1041): “The general principles by which a government is guided in its management of public affairs, or the legislature in its measures * * * This term, as applied to a law, ordinance, or rule of law, denotes its general purpose or tendency considered as directed to the welfare or prosperity of the state or community.”
“By-laws, rules and regulations” would appear to be almost synonymous. Essentially, they are the rules by which an authority, whether governmental or corporate, acts, regulates and conducts its operations and activities.
A “policy” does not connote the same degree of detail and specificity concerning such operations. It does not prescribe action. It is in the ordinary sense a statement of the purpose, principle and motivation which impels particular action. A “policy” states the result sought to be achieved. A rule or regulation or by-law dictates the action to be taken and the means by which the policy is to be accomplished.
While the State Administrative Procedure Act does not bind the operations of a municipal housing authority, it is *673 useful to examine that statute and its definition of the term “rule” and its reference to an agency’s “policy”. Section 102 (subd 2, par [a]) of the State Administrative Procedure Act defines “rule” in pertinent part as follows: “2. (a) ‘Rule’ means (i) the whole or part of each agency statement, regulation or code of general applicability that implements or applies law, or prescribes the procedure or practice requirements”.
There are excluded from this definition of “rule” by section 102 (subd 2, par [b], cl [iv]) of the State Administrative Procedure Act “statements of general policy which in themselves have no legal effect but are merely explanatory”.
The definition of “rule” under this act has as its primary thrust the practice and procedure for implementing the law. Its emphasis is upon action. “Regulations and codes” are clearly synonymous with “rules”. A policy under the State Administrative Procedure Act is excluded from the term “rule”. A policy is intended to explain the purpose of the law. It has no legal effect. The legal effect of the policy is implemented by the rules and regulations of the agency.
Under the Public Housing Law and its related codes, rules and regulations the “by-laws, rules and regulations” of a housing authority must receive prior approval for effectiveness. There is no similar requirement for a “policy” stated and established by an authority.
9 NYCRR 1627-6.3 (a) (8) makes reference to an authority’s policy with respect to single-person occupancy and not to a rule or regulation related thereto. We must assume that the writers of the statute and the codes, rules and regulations governing the conduct of housing projects understood and intended the difference between “rules and regulations” and “policies”. By implication, at least, 9 NYCRR 1627-6.3 (a) (8) authorizes a housing authority to establish a policy or principle concerning residual single-person occupancies. The policy, as established, is to restrict single-person occupancies of two-bedroom apartments to senior citizens and “near seniors”. It is motivated by concern for the greater problems of senior citizens in seeking and finding housing accommodations and the recognition that younger people can better cope with these difficulties. *674 The effectuation of a proposed removal of a tenant is governed by the rules and regulations of the authority. Thus, in this case and in accordance with the rules and regulations of the authority, notice was served upon the tenant of the authority’s election to terminate his tenancy as a residual single-person occupant. That notice stated the policy of the authority with respect to single-person occupancies and advised the tenant of his right to an appellate hearing before the Board of Review of the Mount Vernon Housing Authority. The tenant did not choose to appeal.
It is the conclusion of the court that the tenant’s right of occupancy was duly terminated in furtherance of a policy properly adopted and reasonably and uniformly applied.
One other issue has been raised by the tenant. The tenant contends that if he is compelled to move, then he is being denied the right to rent or lease an apartment by reason of age, in violation of subdivision 2-a of section 296 of the New York State Executive Law (the Human Rights Law). That section in pertinent part provides as follows:
“2-a. It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations or other person having the right of ownership or possession of or the right to rent or lease such accommodations:
“(a) To refuse to rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations because of the race, creed, color, disability, national origin, age, sex or marital status of such person or persons.
“(b) To discriminate against any person because of his race, creed, color, disability, national origin, age, sex or marital status in the terms, conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith.”
The court finds no discriminatory practice in the policy adopted by the Mount Vernon Housing Authority. The tenant is not being denied occupancy because of his age but rather because he is a single-person occupant. The election of the authority not to enforce the prohibition of residual single-person occupancies against “senior citi *675 zens” and “near seniors” does not create age as a criterion or classification for tenancy in the authority’s housing project. It is merely an easing of the restriction against certain single-person occupancies to avoid the imposition of an undue hardship. An exercise of judgment and perhaps an act of compassion in the enforcement of the policy against single-person occupancies does not convert that policy into an act of discrimination.
Judgment is granted, therefore, awarding possession of the premises to the landlord upon conditions with respect to time of removal and payment for use and occupancy, to be determined by the court at a hearing to be held on August 18, 1982 at 10:00 a.m. in the Council Chambers, room No. 206.